UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

---

| | |
|---|---|
| ALISSA JUECH, | CIV NO. 15-1482 |
| Plaintiff, | |
| v. | |
| CHILDREN'S HOSPITAL AND HEALTH SYSTEM, INC. and CHILDREN'S HOSPITAL OF WISCONSIN, INC., | **COMPLAINT** |
| | **JURY TRIAL DEMANDED** |
| Defendants. | |

---

Plaintiff, ALISSA JUECH, by and through her undersigned counsel, EISENBERG & BAUM, LLP, and CROSS LAW FIRM, S.C., for her Complaint against Defendants, CHILDREN'S HOSPITAL AND HEALTH SYSTEM, INC. and CHILDREN'S HOSPITAL OF WISCONSIN, INC., hereby alleges as follows:

## PRELIMINARY STATEMENT

1. Plaintiff Alissa Juech is a deaf individual who communicates primarily in American Sign Language ("ASL"), which is her expressed, preferred, and most effective means of communication. During Plaintiff's infant son's medical treatment at Defendants' hospital, Defendants discriminated against her by failing and/or refusing to provide auxiliary aids and services to accommodate her disability, despite her repeated requests for effective communication.

2. Lip-reading, the ability to understand the speech of another by watching the speaker's lips, does not provide effective communication for most deaf and hard of hearing

1

individuals. In fact, the upper limits of estimates for lip-reading accuracy, in an ideal one-on-one situation, have been as low as 10% to 30%. This is because only a small amount of the spoken sounds of aural language are visible, and many of those appear identical on the lips. Even if a primary ASL user were able to determine the sounds appearing on a speaker's lips, he or she would still not necessarily understand the English language or the speaker's vocabulary, because many deaf individuals, including Plaintiff, have difficulty acquiring and communicating in English. Despite this, Defendants often forced Plaintiff to communicate in a medical setting using this unreliable and ineffective method, instead of properly accommodating her disability through qualified ASL interpreters.

3.     Video Remote Interpreting (VRI) is a video telecommunication service that uses devices such as web cameras or videophones to provide sign language or spoken language interpreting services through a remote or offsite interpreter. VRI is inappropriate in many circumstances, including when the deaf user has other conditions that impair the deaf user's ability to utilize the device (i.e., if the deaf user has a visual impairment, is in a lot of pain, or cannot achieve the proper posture); when there are many people in a room; when staff is inadequately trained to set up or operate the device; or in situations that are especially complicated or emergent. Despite this, Defendants often forced Plaintiff to utilize a nonfunctioning VRI, or to use VRI when it was not appropriate to do so, instead of properly accommodating her disability.

4.     Plaintiff brings this action to compel Defendants to cease unlawful discriminatory practices and implement policies and procedures that will ensure effective communication, full and equal enjoyment, and a meaningful opportunity to participate in and benefit from Defendants' health care services. Plaintiff seeks declaratory, injunctive, and equitable relief; compensatory and punitive damages; and attorneys' fees and costs to redress Defendants' unlawful discrimination on

the basis of disability in violation of Title III of the Americans with Disabilities Act ("ADA"), 42 U.S.C. § 12181 et seq.; Section 504 of the Rehabilitation Act of 1973, 29 U.S.C. § 794; Wis. Stat. § 106.52; and other state and common law causes of action.

## THE PARTIES

5. Plaintiff ALISSA JUECH brings this action and is an individual residing at 3634 East Armour Avenue, Cudahy, Wisconsin 53110. Alissa Juech is a profoundly deaf individual who primarily communicates in American Sign Language, and she is substantially limited in the major life activities of hearing and speaking within the meaning of federal and state anti-discrimination laws.

6. Defendant, CHILDREN'S HOSPITAL AND HEALTH SYSTEM, INC., at all times hereinafter mentioned, is a corporation that has been licensed and doing business in Wisconsin with a principal place of business at 999 North 92nd Street, Wauwatosa, Wisconsin 53226. Defendant owns, leases, and/or operates Children's Hospital of Wisconsin, a hospital located at 8915 West Connell Court, Milwaukee, Wisconsin 53226. Defendant is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Title III of the ADA, the Rehabilitation Act, and Wis. Stat. § 106.52.

7. Defendant, CHILDREN'S HOSPITAL OF WISCONSIN, INC., at all times hereinafter mentioned, is a corporation that has been licensed and doing business in Wisconsin with a principal place of business at 999 North 92nd Street, Wauwatosa, Wisconsin 53226. Defendant owns, leases, and/or operates Children's Hospital of Wisconsin, a hospital located at 8915 West Connell Court, Milwaukee, Wisconsin 53226. Defendant is a place of public accommodation under federal and state antidiscrimination laws and is a recipient of federal

financial assistance, including Medicare and/or Medicaid reimbursements, thus making Defendant subject to the requirements of Title III of the ADA, the Rehabilitation Act, and Wis. Stat. § 106.52.

## JURISDICTION & VENUE

8. This Court has jurisdiction over the subject matter of this action pursuant to 28 U.S.C. §§ 1331 and 1343 for Plaintiff's claims arising under federal law, and supplemental jurisdiction pursuant to 28 U.S.C. § 1367 for Plaintiff's claims arising under state law.

9. Venue is proper in this district pursuant to 28 U.S.C. § 1391(b)(2) because the Defendants reside within the jurisdiction of this district, and a substantial part of the events that give rise to the claims occurred in this district.

## STATEMENT OF FACTS

10. Alissa Juech is a profoundly deaf individual who communicates primarily through American Sign Language ("ASL").

11. Alissa Juech has limited proficiency in written English, and requires auxiliary aids and services to communicate effectively in a medical setting.

12. Alissa Juech has a minor son, B.J., who was admitted to Children's Hospital from February 5, 2015 until February 8, 2015.

13. As the natural parent and guardian of B.J., Alissa Juech has both the legal right and legal obligation to make medical decisions for her son.

14. Upon B.J.'s admission to Children's Hospital, Alissa Juech requested an ASL interpreter in order to understand her son's medical condition and treatment.

15. In response to this request, Children's Hospital staff provided a VRI device, but Alissa Juech requested that Children's Hospital provide an in-person, onsite interpreter instead of the VRI device.

16. Children's Hospital staff initially did honor Alissa Juech's request for an onsite

interpreter; however, as soon as the interpreter arrived, a hospital manager or administrator forced the interpreter to leave and told Alissa Juech that she must utilize the VRI device.

17. From that point on, Children's Hospital did not provide an onsite interpreter for Alissa Juech, and instead provided only the VRI device.

18. The VRI device was rarely utilized during B.J.'s treatment because Children's Hospital staff did not know how to set it up or use it.

19. Even when the VRI was used, both technical and logistical difficulties made it an ineffective form of communication for Alissa Juech.

20. The VRI device took several minutes to start up, causing delays in communication between Alissa Juech and Children's Hospital staff.

21. The VRI device also froze constantly, causing further delays in communication between Alissa Juech and Children's Hospital staff.

22. At various points throughout B.J.'s treatment, the interpreter and staff could not hear each other over the baby's screams, and the VRI device had to be moved into the hallway, meaning that Alissa Juech was removed from her child's presence and from the presence of the doctors and nurses who were treating him.

23. Additionally, it was often difficult for Children's Hospital staff to find an available electrical outlet for the VRI device, which again meant it needed to be moved to the hallway, away from B.J.

24. Utilizing the VRI in the hallway forced Alissa Juech to discuss her son's confidential medical treatment in the presence of anyone who passed.

25. It was exceedingly difficult for Alissa Juech to utilize the VRI device while breastfeeding, because she was forced to stand in order to see the machine and sign at the same

time, all while holding her child.

26. In many instances, it was difficult for Alissa Juech to utilize the VRI device because there were many people in B.J.'s treatment room, causing awkward communication angles that made it necessary for Alissa Juech to constantly maneuver around the room to preserve her line of sight on the VRI device.

27. Upon information and belief, Children's Hospital has only one VRI device.

28. At the time of B.J.'s treatment, there was another deaf person at Children's Hospital, and the VRI device was passed back and forth between Alissa Juech and the other deaf person; consequently, neither deaf individual had adequate access to the VRI device.

29. At one point during B.J.'s medical treatment, a nurse administered an IV to B.J. without explaining its nature or purpose to Alissa Juech, who was forced to attempt to ask the nurse about the procedure afterwards using pen and paper; consequently, Alissa Juech was unable to give informed consent for that treatment.

30. Throughout B.J.'s medical treatment, up to and including his discharge from Children's Hospital, Alissa Juech had little to no understanding of her son's medical condition, the tests he underwent and the medication he received, or the instructions for his follow-up care, due to Defendants' failure and/or refusal to provide effective auxiliary aids and services to accommodate her disability.

31. In most instances, effective communication could not have taken place without the aid of a qualified ASL interpreter.

32. Additionally, Defendants' staff was rarely able to properly set up or operate the VRI device.

33. Alissa Juech was constantly in the dark about her son's medical condition due to

6

Defendants' failure and/or refusal to provide effective auxiliary aids and services.

34. Defendants knew or should have known of their obligations under the ADA, Section 504 of the Rehabilitation Act, and Wis. Stat. § 106.52 to provide accommodations to individuals with disabilities, including individuals who are deaf or hard of hearing, and to develop policies to promote compliance with these statutes.

35. Defendants and their physicians and staff knew or should have known that their actions and/or inactions created an unreasonable risk of causing Plaintiff greater levels of fear, anxiety, indignity, humiliation, and/or emotional distress than a hearing person or companion would be expected to experience.

36. Defendants' failure to ensure effective communication with Plaintiff deprived Plaintiff of her right and her ability to make decisions regarding her son's medical treatment, to give informed consent for such treatment, and to maintain privacy with regard to medical information.

37. As a result of Defendants' failure to ensure effective communication with Plaintiff, Plaintiff and Plaintiff's son received services that were objectively substandard and that were inferior to those provided to hearing individuals and to the infant children of hearing individuals.

38. Additionally, as a result of Defendants' failure to ensure effective communication with Plaintiff, Plaintiff was denied the same opportunities that are readily and routinely provided to companions to participate in the care of children or other family members.

39. Defendants' wrongful and intentional discrimination against Plaintiff on the basis of disability is reflected by the Defendants' failure to train employees and promulgate policies of non-discrimination against deaf individuals.

40. Defendants discriminated against Plaintiff with deliberate indifference to her

communication needs, causing her to endure humiliation, fear, anxiety, and emotional distress.

41. Plaintiff would seek Defendants' healthcare services in the future, whether by choice or necessity, either for herself or for her son, due to the proximity of Defendants' medical facilities to their home; but she is deterred from doing so due to the discrimination she has faced and expects to face in the future.

## CLAIM 1: VIOLATIONS OF TITLE III OF THE AMERICANS WITH DISABILITIES ACT

42. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

43. At all times relevant to this action, Title III of the ADA, 42 U.S.C. § 12181, et seq., has been in full force and effect and has applied to Defendants' conduct.

44. At all times relevant to this action, the United States Department of Justice regulations implementing Title III of the ADA, 28 C.F.R. Part 36, have been in full force and effect and have applied to Defendants' conduct.

45. At all times relevant to this action, Plaintiff has been substantially limited in the major life activities of hearing and speaking, and is an individual with a disability within the meaning of the ADA, 42 U.S.C. § 12102(2).

46. Defendants own, lease, and/or operate a place of public accommodation within the meaning of Title III of the ADA, 42 U.S.C. § 12181(7)(D).

47. Title III of the ADA provides that "[n]o individual shall be discriminated against on the basis of disability in the full and equal enjoyment of the goods, services, facilities, privileges, advantages, or accommodations of any place of public accommodation by any person who owns, leases (or leases to), or operates a place of public accommodation." 42 U.S.C. § 12182(a).

48. Title III of the ADA defines discrimination to include denying participation or

8

offering an unequal or separate benefit to individuals with disabilities. 42 U.S.C. § 12182(b)(1)(A).

49. Title III of the ADA further defines discrimination to include "a failure to take such steps as may be necessary to ensure that no individual with a disability is excluded, denied services, segregated or otherwise treated differently than other individuals because of the absence of auxiliary aids and services." 42 U.S.C. § 12182(b)(2)(A)(iii).

50. Federal regulations implementing Title III of the ADA provide that "[a] public accommodation shall furnish appropriate auxiliary aids and services where necessary to ensure effective communication with individuals with disabilities. This includes an obligation to provide effective communication to companions who are individuals with disabilities." 28 C.F.R. § 36.303(c).

51. Federal regulations implementing Title III of the ADA provide that when a public accommodation provides VRI service, it must ensure that the service includes all the following criteria: "(1) Real-time, full-motion video and audio over a dedicated high-speed, wide-bandwidth video connection or wireless connection that delivers high-quality video images that do not produce lags, choppy, blurry, or grainy images, or irregular pauses in communication; (2) A sharply delineated image that is large enough to display the interpreter´s face, arms, hands, and fingers, and the participating individual's face, arms, hands, and fingers, regardless of his or her body position; (3) A clear, audible transmission of voices; and (4) Adequate training to users of the technology and other involved individuals so that they may quickly and efficiently set up and operate the VRI." 28 C.F.R. § 36.303(f).

52. Defendants discriminated against Plaintiff, on the basis of disability, in violation of Title III of the ADA and its implementing regulations.

53. As set out above, absent injunctive relief there is a clear risk that Defendants'

9

actions will recur with Plaintiff and/or additional deaf persons.

54. Plaintiff is therefore entitled to injunctive relief, as well as an award of attorneys' fees, costs, and disbursements pursuant to the ADA, 42 U.S.C. § 12188(a)(1), and/or common law.

**CLAIM 2: VIOLATIONS OF SECTION 504 OF THE REHABILITATION ACT**

55. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

56. At all times relevant to this action, Section 504 of the Rehabilitation, 29 U.S.C. § 794, has been in full force and effect and has applied to Defendants' conduct.

57. At all times relevant to this action, the United States Department of Health and Human Services ("HHS") regulations implementing Section 504 of the Rehabilitation Act, 45 C.F.R. Part 84, have been in full force and effect and have applied to Defendants' conduct.

58. At all times relevant to this action, Plaintiff has had substantial limitations to the major life activities of hearing and speaking, and has been an individual with a disability within the meaning of the Rehabilitation Act, 29 U.S.C. § 705(9).

59. At all times relevant to this action, Defendants have each been programs or activities receiving federal financial assistance pursuant to 29 U.S.C. § 794(b).

60. Section 504 of the Rehabilitation Act provides that "[n]o otherwise qualified individual with a disability . . . shall, solely by reason of her or his disability, be excluded from the participation in, be denied the benefits of, or be subjected to discrimination under any program or activity receiving Federal financial assistance." 29 U.S.C. § 794.

61. The Rehabilitation Act permits associational claims by extending relief to "any person aggrieved" by discrimination in violation thereof. 29 U.S.C. § 794a(a)(2).

62. Defendants discriminated against Plaintiff, solely on the basis of disability, by denying her meaningful access to the services, programs, and benefits the Defendants offer to other

10

individuals, and by refusing to provide auxiliary aids and services necessary to ensure effective communication, in violation of 29 U.S.C. § 794.

63. As set out above, absent injunctive relief there is a clear risk that Defendants' actions will recur with Plaintiff and/or additional deaf persons.

64. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct and deliberate indifference as hereinbefore alleged, pursuant to 29 U.S.C. § 794(a).

65. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to the Rehabilitation Act, 29 U.S.C. § 794(a) and/or common law.

## CLAIM 3: VIOLATIONS OF WIS. STAT. § 106.52

66. Plaintiff repeats and realleges all preceding paragraphs in support of this claim.

67. At all times relevant to this action, Wis. Stat. § 106.52 has been in full force and effect and has applied to Defendants' conduct.

68. At all times relevant to this action, Plaintiff has had substantial impairment to the major life activities of hearing and speaking, and has therefore been a qualified individual with a disability within the meaning of Wis. Stat. § 106.52(1)(c).

69. At all times relevant to this action, Defendants have operated public accommodations within the meaning of Wis. Stat. § 106.52(e).

70. Pursuant to Wis. Stat. § 106.52(3)(a)(1), no person may "[d]eny to another . . . the full and equal enjoyment of any public place of accommodation or amusement because of . . . disability."

71. As set forth above, Defendants discriminated against Plaintiff on the basis of her disability, in violation of Wis. Stat. § 106.52.

72. As set forth above, absent injunctive relief there is a clear risk that Defendants' actions will continue to reoccur with Plaintiff and/or other deaf persons or companions.

73. Plaintiff is therefore entitled to seek and recover compensatory damages for the injuries and loss she sustained as a result of Defendants' discriminatory conduct as hereinbefore alleged, pursuant to Wis. Stat. § 106.52(4)(e).

74. Plaintiff is further entitled to an award of punitive damages pursuant to Wis. Stat. § 106.52(4)(e).

75. Plaintiff is further entitled to an award of attorneys' fees, costs, and disbursements pursuant to Wis. Stat. § 106.52(4)(e).

## PRAYER FOR RELIEF

**WHEREFORE,** Plaintiff respectfully prays that this Court grant the following relief:

a. Enter a declaratory judgment, pursuant to Rule 57 of the Federal Rules of Civil Procedure, stating that Defendants' policies, procedures, and practices have subjected Plaintiff to unlawful discrimination in violation of Title III of the Americans with Disabilities Act, Section 504 of the Rehabilitation Act, and Wis. Stat. § 106.52;

b. Enjoin Defendants from implementing or enforcing any policy, procedure, or practice that denies deaf or hard of hearing individuals meaningful access to and full and equal enjoyment of Defendants' facilities, services or programs;

c. Order Defendants:

   i. to develop, implement, promulgate, and comply with a policy prohibiting future discrimination against Plaintiff or other deaf or hard of hearing individuals by failing to provide effective communication;

   ii. to develop, implement, promulgate, and comply with a policy requiring that

12

Case 2:15-cv-01482-WED   Filed 12/11/15   Page 12 of 15   Document 1

when a deaf or hard of hearing individual requests an on-site interpreter for effective communication, one will be provided as soon as practicable in all services offered by Defendants;

iii. to develop, implement, promulgate, and comply with a policy to ensure that Defendants will notify individuals who are deaf or hard of hearing of their right to effective communication. This notification will include posting explicit and clearly worded notices that Defendants will provide sign language interpreters, videophones, and other communication services to ensure effective communication with deaf or hard of hearing persons;

iv. to develop, implement, promulgate, and comply with a policy to ensure, in the event the Defendants utilize a Video Remote Interpreting System ("VRI"), that such system has a high-speed Internet connection; a video screen with appropriate size, position, capture angle, focus, and proximity to the deaf individual; and appropriate audio quality. When possible, the equipment should be portable and made available to the patient where the patient is located, preferably in a private room to minimize distractions and maintain confidentiality;

v. to develop, implement, promulgate, and comply with a policy to ensure that deaf or hard of hearing patients are able to communicate through the most appropriate method under the circumstances, recognizing that the VRI is not appropriate in all medical situations;

vi. to create and maintain a list of American Sign Language interpreters and ensure availability of such interpreters at any time of day or night;

13

vii. to train all their employees, staffs, and other agents on a regular basis about the rights of individuals who are deaf or hard of hearing under the ADA, Section 504 of the Rehabilitation Act, and Wis. Stat. § 106.52;

viii. to train all their employees, staffs, and other agents on a regular basis about Defendants' policies regarding how to properly use VRI services (including how to set up the VRI system and how to obtain technical assistance in case of system malfunction or failure) and how to obtain interpreters when reasonably requested by deaf or hard of hearing patients;

d. Award to Plaintiff:

i. Compensatory damages pursuant to Section 504 of the Rehabilitation Act and Wis. Stat. § 106.52;

ii. Reasonable costs and attorneys' fees pursuant to the ADA, Section 504 of the Rehabilitation Act, and Wis. Stat. § 106.52;

iii. Punitive damages pursuant to Wis. Stat. § 106.52;

iv. Interest on all amounts at the highest rates and from the earliest dates allowed by law;

v. Any and all other relief that this Court finds necessary and appropriate.

## JURY DEMAND

Plaintiff demands trial by jury for all of the issues a jury properly may decide, and for all of the requested relief that a jury may award.

Respectfully submitted,

EISENBERG & BAUM, LLP

By: s/ Andrew Rozynski

Andrew Rozynski, Esq.
NY Bar ID: 5054465
Eric Baum, Esq.
NY Bar ID: 2591618


24 Union Square East, Fourth Floor
New York, NY 10003
Phone: (212) 353-8700
Fax: (212) 353-1708
arozynski@eandblaw.com
ebaum@eandblaw.com


CROSS LAW FIRM, S.C.

By: s/ Mary C. Flanner
    Nola J. Hitchcock Cross
    Wisconsin Bar Number: 1015817
    Mary C. Flanner
    Wisconsin Bar Number: 1013095

    845 North 11th Street
    Milwaukee, WI 53233
    Phone: (414) 224-0000
    Fax: (414) 273-7055
    njhcross@crosslawfirm.com
    mflanner@crosslawfirm.com

*Attorneys for Plaintiff Alissa Juech*